Good morning ladies and gentlemen. We're here for the case of Ensyxiengmay v. Morgan Counsel. Good afternoon. May it please the court, my name is Nancy Tenney and I represent the petitioner in this case, Mr. Ensyxiengmay. I would like to reserve ten minutes for rebuttal. I'd like to focus in my arguments on the claim that has received the most attention in this case and that is Mr. Ensyxiengmay's exclusion from the in-camera hearing. All of the courts to have reviewed that claim have concluded that it was error to exclude both the defendant and defense counsel from that hearing. Following the evidentiary hearing that was held in district court, the question now before your honors is whether or not that error was harmless. Whether that error had a substantial and injurious effect on the jury's verdict. And we submit it does. The factual findings that were developed at the evidentiary hearing include the statement that Deputy Casio told the confidential informant, Mr. Prack, that Saldanam Mizangse, the state's star witness, had actually confessed to being the shooter. Another finding by the district court, and I quote, during the time between the offense and his arrest that Mr. Ensyxiengmay told Mr. Prack that he was not the shooter. Where does it get you if you prove that your client is not the shooter and only an accomplice? It raises a host of questions. If Mr. Ensyxiengmay is not the shooter and Mr. Mizangse is, it completely undermines the state's primary theory. It makes Mr. Mizangse's plea agreement void. His plea agreement was scripted that he would say that Mr. Ensyxiengmay is the shooter. But perhaps more important is if Mr. Ensyxiengmay is not the shooter, then to convict him, the jury has to look to accomplice liability. And there were a number of issues at the trial relating, errors relating to how the jury was instructed. First of all, in closing argument, the state was allowed to misstate the law, to say essentially that all the state needed to prove was that if Mr. Ensyxiengmay participated in acts, they didn't have to prove that he had the specific intent of the crimes charged. And therefore, if he got in the car and someone in the car had the intent to murder, they could find him liable for that. Also of concern is the fact that the district court failed to provide a manslaughter instruction. And again, when the jury did look at the evidence, they concluded there was no premeditated intent on Mr. Ensyxiengmay's part. They only had the option of either convicting Mr. Ensyxiengmay of extreme indifference murder or acquitting him altogether. And that, combined with the error in the instruction on accomplice liability, made it very misleading for the jury and greatly lessens the state's burden. But if there's no constitutional error in the giving of the failure to give the manslaughter instructions and the giving of the accomplice instructions, can you show prejudice as resulting from the exclusion from the hearing? In other words, is your argument on prejudice dependent on you winning other arguments in this case? I don't believe it is, Your Honor. And in looking to prejudice, the court needs to look at the record as a whole. So it needs to look at all of the various things that happened in this case. The court can also look to the fact that Mr. Ensyxiengmay did not testify and that Mr. Pratt's testimony would have greatly aided defense counsel in convincing Mr. Ensyxiengmay to testify. He was reluctant and under some pressure from the court. He ultimately decided not to testify and later changed his mind, but the court wouldn't allow it. Had Mr. Pratt been available, for instance, he had prior – he would have been able to provide prior consistent statements that would have helped defense counsel. But all those statements related to whether he was a shooter or not, didn't they? His statements also related to what his intent was in getting into the car. Mr. Trial Counsel testified as to what Mr. Ensyxiengmay's testimony would have been, and it includes that he had no intention that any shooting would take place that night. And also Mr. Pratt's testimony would have bolstered that testimony by Mr. Pratt's own testimony regarding what a typical response to the egging would be. The typical response to provocation was to go and confront the other individuals, but not to confront them with violence, to try to resolve the situation without resulting to violence. That's the counsel. Excuse me, but Mr. Ensyxiengmay's admissible confession indicated that he went into the house to get a rifle before getting into the car, that chased the car, that egged the snake house, and then after the shooting, he returned to the house, gave the rifle to Wendy West, told her, we shot him, and asked her to get rid of the rifle. Now, with that kind of evidence, I find it hard to reach a conclusion about prejudice in this case. I appreciate that, Your Honor, and that the circumstances, much of the facts are not contested. In terms of what you've just outlined, what that doesn't answer is, again, who was the shooter and what was Mr. Ensyxiengmay thinking when he entered the car. And there was a great deal of testimony about how in gangs it was very common to carry a rifle for self-protection, not necessarily meaning to go out intending to harm someone, but that if you needed to carry the weapon for protection. But he wasn't convicted of being a shooter, was he? We don't know that from the jury's verdict. There's the jury found guilty of first-degree murder based on extreme indifference to human life. Well, there's any number of things that the jury could have found. We don't know that. Are they given an alternative in their findings? They were instructed on aggravated first-degree murder, which is premeditated intentional murder, extreme indifference murder. They were also instructed on second-degree murder, which is also an intentional murder. So if they didn't find that Mr. Ensyxiengmay intended, they were left only with the option of extreme indifference or acquittal. Their finding of extreme indifference could reflect their belief that he shot the weapon but wasn't aiming directly at them, that was shot the weapon meaning to frighten them. We just don't know what the jury was thinking. But they could have convicted him under that theory, even if he were just a writer and not the shooter, right? They could have, but again— So then that's where the prejudice question comes. If a jury could convict him rationally on this evidence, even though he was not the shooter, then it's hard to see how you're prejudiced. Well, I think the problem lies in the fact that the jury was not allowed to hear so much of the truth in this case. They weren't allowed to hear Mr. Ensyxieng maybe confess to law enforcement, that he didn't pass a polygraph. There were many indications that he was simply not telling the truth. I think you say he didn't pass. They didn't say that he failed the polygraph. I mean, they found that he was, for various reasons, they were unable to come to any conclusions on the polygraph. And several times in the papers it talks about his failing the polygraph. And I couldn't find anything in the record that indicated that he failed. In fact, the record uses quite different terms. It says, in my opinion, based on the results and the qualifications listed above, the overall assessment of this exam is indefinite and inconclusive. And the polygrapher said he found that this young person was not a suitable subject for polygraph. So it's quite different than saying he failed the polygraph. I think the overall result was that inconclusive. However, the report does say on the question of whether Mr. Ensyxieng fired the rifle, the report stated that it indicated deception, that Mr. Ensyxieng's emotional reactions indicated deception. It's not conclusive, but it's significant that the state's response to their own polygraph was to simply eliminate it and move forward. It seems that there were numerous indications, or there should have been, had there been a proper in-camera hearing, that Mr. Ensyxieng, he was the shooter, and he perhaps should not be the individual who is getting the benefit of a plea bargain that allowed him to be prosecuted as a juvenile. I think you're down to ten minutes, Your Honor. Thank you. May it please the Court. John Sampson, Assistant Attorney General, representing the Respondent. The district court correctly denied relief in this case. In going to the issue just discussed by counsel, the district court correctly found there was no actual prejudice arising from the error in the hearing, the exclusion of the petitioner from the hearing. Petitioner's counsel points to many factors. One was whether or not the petitioner was the actual shooter. But the jury could and would have still convicted Mr. Ensyxieng May even if he was not the shooter. The jury did not find that he acted with premeditated intent. Instead, they convicted him of the extreme indifference to human life standard. And counsel argues that he could have been the shooter and still acted with extreme indifference. He could have, Your Honor. But he could also have not have been the shooter and still acted with extreme indifference. We really don't know what the jury found about whether he was the shooter. That's correct. There was no special verdict on that point. Explain to me what your theory would be if he's just a rider in the car. How would he be acting with extreme indifference, just failing to grab the gun, failing to intervene? That's a wholly different case than the one tried. Your Honor, the prosecutor actually argued to the jury, and this is at supplemental excerpts of record 270 to 271, that theory of the jury didn't have to find that he was the actual shooter. And there was evidence that first that he went into the house and got the gun. There was evidence that he said, I'm going to get them. There was evidence from his own confession to the police that even though he confessed that he was not the shooter and pointed to a fictitious fourth individual, he said, I handed the gun to Candyman, and Candyman then handed the gun to Jayrock. And the reason that he did that was the window would not roll down more than halfway, so essentially he could not point the gun out the window. So his own confession, even if he was not the shooter, showed that he had intent that the gun actually be fired at the car they were pursuing. Counsel also argues that the jury may not have convicted him because he was not the shooter, but the jury convicted the driver of aggravated first-degree murder. So the jury did not have to find that Petitioner was the shooter to convict him of the crime of what she was convicted of, first-degree murder. Counsel also argues that Candyman, the witness for the state, had confessed to the police to being the actual shooter. There's no substantive evidence to prove that fact. The district court found at Excerpts of Record 79, the record's not clear whether in fact there was any such statement by Ms. Sesenge to the police. The only evidence is a triple hearsay statement that Mr. Prack recalls Deputy Cascio telling him that Candyman had confessed to another police detective. And Mr. Prack's testimony on this point is very inconsistent, and on cross-examination he admitted, I don't know what Deputy Cascio actually told me about who was the shooter. And that's at Excerpts of Record 136. So this claim that there's this overwhelming evidence that Candyman was the actual shooter and he confessed to this, there's simply no substantive evidence for that. In addition, the... Well, the affidavit was years earlier, wasn't it? I'm sorry, Your Honor? Wasn't there an affidavit years earlier? There was an affidavit made nine years after the murder. But how long before the hearing? I believe that was just a few years before the hearing. It was not long before the hearing that he made that affidavit. And he admitted, Mr. Prack admitted that when he made that affidavit, his memory was shaky at that time as well. And then he admitted in his deposition prior to the evidentiary hearing, and he admitted to making the statements in the deposition, that he did not recall Deputy Cascio saying that Candyman had confessed. He also did not actually recall Mr. Ntsinkseme saying that he was not the shooter and that Candyman was the shooter. So his testimony is very inconsistent. To say that it shows actual prejudice is incorrect. In addition, it's important to keep in mind what the actual error was. The error was the exclusion of the Petitioner from the in-camera hearing. Much of what they point to, such as the statements that Petitioner may have made to Mr. Prack, don't come from his role as the confidential informant. They come from his role as an OLB gang member, and that is a fact that the Petitioner knew. He was a friend of Mr. Prack. He would have known whether he actually made any statements to Mr. Prack about the shooting. Similarly, Mr. Prack's opinions regarding who would be more violent or less violent, that, again, does not come from his role as the confidential informant. That comes from his role as a gang member, a fact already known to the defense. The only real evidence that the confidential informant provided to the police was, here is where the two defendants or three defendants could be located to be arrested. That's the only evidence that actually was passed on to Deputy Casio. There was no evidence regarding statements made by any of the gang members about the murder passed on to the police by Mr. Prack in his role as a confidential informant. In addition, much of the other evidence that the Petitioner relies on by Mr. Prack simply would not even be admissible in a state court trial. The testimony regarding the opinions of who would be more violent or less violent, much of the hearsay statements would not even be admissible. The statements that the Petitioner said, I was not the shooter would only be admissible if the Petitioner actually testified, and then they could bring them in as a prior consistent statement. But otherwise, they would not be admissible. The statements about what Deputy Casio allegedly told Mr. Prack. Well, Mr. Ming-Sing-Lei did testify. He did testify. So that would have been admissible as a prior and consistent statement. Although it would be triple hearsay at that point, so I'm not sure that. He could certainly ask, didn't you tell the police officer that you were the shooter? Yes, Your Honor. He could, and he could deny that, and there would be no substantive evidence to prove that up. In addition, there was other evidence. They called Spartacus Williamson, who was another gang member. This is that excerpt from Record 549, who did testify that when he was in Juvenile Hall with Candyman, Candyman confessed to being the shooter. So any evidence that Mr. Prack may have brought in. Well, that's not quite as believable as telling a police officer. No, Your Honor. But, again, that is a triple hearsay statement that Mr. Ming-Sing-Lei could have denied, and there would be no evidence to prove up that fact. So the district court correctly determined that there was no prejudice and denied relief on that claim, unless the Court has further questions. Well, opposing counsel didn't mention the Bruton issue. I'm just going to say one of the things that bothered me most about this case was the prosecutor mentioning Mr. Ming-Sing-Lei's name repeatedly in closing argument. What is your response to that? Your Honor, I think that what it was was confusion over the two statements, because there was a properly admitted statement through Candyman's direct testimony at trial to the petitioner's statements, I'm going to get them, I'm going to get them. And I don't know if the prosecutor was mixing that or confusing that statement with the other co-defendant's statements of someone said, let's go get them. That's a possibility. But what the claim actually goes to that they have raised is not the prosecutor's closing argument, but the statements by Detective Wimer, where Detective Wimer confused the two statements. And that error, he was asked, is there any evidence that the petitioner, Mr. Ming-Sing-Lei, directed the path of the car. And he said, other than the statement, let's go get them. And then he was asked, is there any evidence of why he went in and grabbed the rifle. And, again, he referred to the statement, let's go get them. That was an error because that was the statement of the non-testifying co-defendant. But the prosecutor clarified that error on redirect and properly corrected the fact that those statements did not come from Sing-Sing-Lei. They came from the non-testifying co-defendant, Shamrock. And for that reason, any error that may have arisen there was clarified. And, again, there's no actual prejudice because there was statements through the testifying co-defendant, Candyman, about the petitioner's statements, I'm going to get them, I'm going to get them. Thank you, counsel. Thank you. Just briefly, Your Honors, the State has argued that Mr. Prack's testimony was somewhat unclear in terms of whether Mr. Cassio, Mr. Deputy Cassio ever made the statement to Mr. Prack about Mr. Mise-en-Scene's confession. And the district court made very careful, factual findings here. And ER 72 specifically says, and I quote, that Mr. Mise-en-Scene confessed to being the shooter, that that's what Deputy Cassio told Mr. Prack. Also, it's interesting, when Deputy Cassio was asked about that conversation, he recalled having that conversation with Mr. Prack. When asked whether he told Mr. Prack that there had been such a confession, he simply said, I don't recall. He didn't deny that statement at all. And, again, it's an awfully important statement to not recall whether it would have occurred. The State has also indicated that Mr. Mise-en-Scene's statements to Mr. Prack about not being the shooter are unclear. Again, the district court, in its factual findings at ER 72, has made a very clear finding that Mr. Mise-en-Scene may have told Mr. Prack he was not the shooter. The State has also indicated that somehow Mr. Prack's information and value to the defense did not come from being a confidential informant, that he was simply another gang member. I think part of the problem here, the reason that he was hidden from the defense and that Deputy Cassio took the steps he did was specifically because Mr. Prack was the informant. He took the steps to make payments to Mr. Prack, see that he was out of town, and to conceal his whereabouts. But also, Mr. Prack's role as an informant, in that role, he was instructed to seek out the three suspects and befriend them so that the law enforcement would be able to arrest them. That's the reason that Mr. Mise-en-Scene was spending time with Mr. Prack to make the statements he did about not being the shooter and about Candyman being the shooter. And it was Mr. Prack's role as an informant that led Deputy Cassio to trust him. He deemed him 100% reliable and trusted him, and therefore trusted him to make the statement that Mr. Mise-en-Scene had confessed to being the shooter. If he were simply another gang member, none of those statements would have come forward. And finally, in terms of Mr. Prack's testimony being cumulative, there was, I believe, one or two other individuals who testified that when Mr. Mise-en-Scene was in juvenile hall, in custody, he confessed to being the shooter. And as the court correctly pointed out, those were not necessarily the most reliable witnesses. They had associations with the gangs. They obviously had criminal history, very different from the 100% reliable informant. One problem is the only evidence as to intent that was before the jury was the evidence that Mr. Ensign made, went in and got the rifle, came back. At some point in the car it said something about, let's go get him. Took the rifle afterwards, said we killed him, and gave it to the young lady and said, get rid of the gun. That's the only evidence as to intent. It's difficult to see how with that evidence before the jury and only that evidence, it would not convict him at least of being an accomplice. Do you have a problem with the ‑‑ are you suggesting they couldn't convict him as an accomplice? Well, here it's difficult to say whether or not he would be convicted of an accomplice, because, again, the jury was erroneously instructed as to what accomplice liability means in this case. I think Mr. Ensign is not walking away from this incident without being responsible for some ‑‑ he has some culpability for being present, being in the car, and even for bringing the rifle. However, there was testimony from Mr. Prack that it would have been reasonable for Mr. Ensign to get into that car, not expecting violence to take place, and that the events escalated to a degree that he never expected, never anticipated, never intended. Whether a jury would find that extreme indifference or more like recklessness, as the manslaughter instruction would allow them to find, that's another question, and that's a question that we can't answer because the jury was never given that opportunity. What's the maximum term for manslaughter? I'm afraid I don't know the answer to that, Your Honor. Is there any difference between the sentence for extreme indifference and for aggravated first degree? There is, Your Honor. I believe aggravated first degree murder carries a mandatory life sentence. Mr. Ensign may have received a sentence of approximately 73 years. And what does that mean practically? I believe he would be eligible for a lease when he's approximately 88 years old. But we don't know if he had been convicted of voluntary manslaughter. We don't know what the maximum term would be, so we don't know whether there's any difference in the potential sentence. I certainly imagine that it being a lesser offense that it would carry a lesser penalty. I simply don't know specifically how much less that would be. Thank you, counsel. Thank you. Court, the case just argued will be submitted. The court will stand and recess for the day.
judges: D.W. Nelson, Reinhardt, Thomas